IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 20-035-RGA |
| | : | |
| | : | |
| Bruce M. Jarvela, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

**I.  INTRODUCTION**

Bruce M. Jarvela is both shamed and saddened by his conduct. While his conduct can be contextualized by the tragedy and trauma of his childhood, Mr. Jarvela recognizes that is not an excuse. It is with that understanding, that the following is offered to provide the Court information on how Mr. Jarvela came to be before the Court and what can be expected of Mr. Jarvela going forward.

**II.  PERSONAL HISTORY AND BACKGROUND**

Mr. Jarvela is 26 years old. He was born in Portsmouth, Virgina to his parents Diana Lynn and Bruce Michael Jarvela II. Mr. Jarvela has two younger siblings, Nicholas (20) and Jordan (24). Mr. Jarvela is quite close to both of his brothers. Mr. Jarvela also remains close with his mother, as well.

At the time of his arrest, he was serving as a United States Senior Airman aircraft mechanic (he is a third-generation military serviceman). Mr. Jarvela served in the Air Force for a little over 5 years. During that time, he was promoted twice, and also was deployed overseas.

Mr. Jarvel is married to Candise Martin. The couple met prior to Mr. Jarvela's enlistment. They have been married for 6 years.

Mr. Jarvela's father was a Navy sailor. He enlisted in the Navy in 1995. His mother worked in childcare. The family moved often, as military families are known to do, but the family stayed in the mid-Atlantic region during the father's military career. Mr. Jarvela was socially shy but did have friends. Being the "new kid" every few years certainly contributed to his awkwardness and self-consciousness; however, Mr. Jarvela overcame this to not only graduate, but largely perform at an honor roll level. (Exhibit I, page 6).

From the outside, Mr. Jarvela's intact middle-class nuclear family, while not idyllic, certainly appeared traditional, quaint, and desirable. However, Mr. Jarvela's childhood was anything but. Beneath the veneer of suburban tranquility was a chaotic and dysfunctional atmosphere that left Mr. Jarvela emotionally and interpersonally stunted. Mr. Jarvela's childhood challenges were so great that it is only now that he has begun to heal from the experiences.

Despite appearances, Mr. Jarvela's family was always short on money. The family periodically would have their electricity turned off. As a result, Mr. Jarvela started working at age 15 to help ease financial concerns at home.

More significantly, Mr. Jarvela's father's sexual proclivities, proved to be the undoing of the family. Mr. Jarvela's father's sexual appetite was voracious, polyamorous and indiscrete. This caused significant tension between Mr. Jarvela's parents and his maternal aunt and uncle, as well as his maternal grandparents. This resulted in Mr. Jarvela hearing and seeing things about his father that greatly disturbed him.

While unconventional sexual interests in and of themselves are not a problem, for Mr. Jarvela's father, it went further than that. Mr. Jarvela's father's conduct was so over the top, that it culminated in him pleading guilty in September 2014, to a federal charge of possession of child pornography. (Exhibit II). Mr. Jarvela's father was discharged from the Navy, and the family was forced to move in with Mr. Jarvela's maternal aunt who resided in Kentucky. In January 2015, Mr. Jarvela's father was sentenced to 97 months. *Id.*

Because of the financial burden on the family and the challenge of the two family's (Mr. Jarvela's and his aunt's) being combined into one home, Mr. Jarvela abandoned his college goals and elected to join the Air Force.

Mr. Jarvela's relationship with his father had long ago become strained, but his conviction created a full-fledged estrangement. The conviction's negative affect on the family paired with his father's overall conduct created a rift in their relationship that is only now being repaired.



Mr. Jarvela's childhood was one filled with chaos, victimization and confusion. However, Mr. Jarvela's childhood does not reflect misconduct by him. His youth was punctuated by his attempts to take advantage of opportunities to move forward, both through school and the military. While Mr. Jarvela's plans have gone off course, his prior law-abiding conduct and the youthful age at which he committed his transgression, allow a tremendous opportunity for rehabilitation. (Exhibit I, page 15).

## III.  DISCUSSION

Mr. Jarvela's advisory Sentencing Guidelines range is life. This is based on a Criminal History Category of I and a total offense level of 43. The offenses plead to, 18 U.S.C. § 2422(b), 2427, and 2256(8) carry a minimum term of imprisonment of 10 years and a maximum term of life imprisonment. However, pursuant to the plea in this case, the government will not seek a sentence greater than 240 months of imprisonment, nor will the Defense seek a sentence less than 180 months of imprisonment. (D.I. 69 ¶ 118).

The Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider, *inter alia*, these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a)(1)–(7).

In the present case, a sentence of 180 months of imprisonment is sufficient, but not greater than necessary, to comply with the statutory directives set forth in § 3553(a). Such a sentence, while less than the maximum the government could ask for, will meet the goals of sentencing under the law.

While the Guideline calculation calls for an extreme sentence, the results of that calculation must be called into question. The question arises, not in whether the calculation is correct, but rather, in whether a sentence even remotely close to that length comports with the requirements of 18 U.S.C. § 3553. In the alternative, the question may be phrased, does a sentence of 15 years achieve the goals of sentencing. *See Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)*, explaining that § 3553 factors are controlling with respect to sentencing and not the Guidelines.

The Guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. While this fact is part of every sentencing consideration, it must be front and center in sentencings related to child pornography. This, due to the fact that the empirical approach used in formulating the Guidelines generally, was not used to create the sentencing regime for child pornography related cases. *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). The use of a political verses empirical approach to the creation of a sentencing range results in, "…Guideline[s] projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Dorvee* at 186. Use the current Guidelines related to child pornography result in sentences that are particularly harsh for first time offenders such as Mr. Jarvela. *Id*.

Thus, while the Guidelines might indicate a range including life and the government may ask for 20 years, the appropriate sentence is 15 years.

Mr. Jarvela does not represent a physical danger. Mr. Jarvela never attempted to meet any of the victims. In addition, the attached report confirms Mr. Jarvela's real world conduct, even without the present prosecution and subsequent treatment, would never approach what he had done online. (Exhibit I, page 6).

The seriousness of this offense is not in dispute. There is recognition of this by all involved, most importantly, by Mr. Jarvela. To that extent, the accompanying report documents Mr. Jarvela's remorse for his conduct. (Exhibit I, pages 6, 13,15). Furthermore, the report demonstrates the significant likelihood of rehabilitation and low risk to reoffend attributed to Mr. Jarvela. (Exhibit I, pages 14-16). These facts point to a rehabilitation process that has already begun and that will only improve with therapy. (Exhibit I, pages 14-16).

The mandatory sentence of 15 years is sufficient to accomplish the goals of sentencing in this case.

## IV. CONCLUSION

Wherefore, for all the above stated reasons, and any other reasons that this Court may find, Mr. Jarvela respectfully requests a sentence of 180 months. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

                                        Respectfully submitted,

                                        ELENI KOUSOULIS
                                        Federal Public Defender

Dated: June 7, 2022      By:     /s/ *David L. Pugh*
                                        David L. Pugh, Esquire
                                        Assistant Federal Public Defender
                                        800 King Street, Suite 200
                                        Wilmington, DE 19801
                                        (302) 573-6010
                                        de_ecf@fd.org

                                        Attorneys for Bruce M. Jarvela, III